UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE, *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|       v. | )   No. 1:12-cv-0062 TWP-MJD |
| | ) |
| PROSECUTOR, MARION COUNTY INDIANA, | ) |
| | ) |
|    Defendants. | ) |

**Plaintiffs' Reply Brief**

**Introduction**

The trial brief of the defendant Prosecutor ("State") argues that Indiana Code § 35-42-4-12, which criminalizes innocent and otherwise lawful behavior of numerous persons convicted of sex offenses, is justified because certain sex offenders may utilize social networking, instant messaging, or chat room sites to try to find children to victimize and because, although those subject to the statute are banned from a significant swath of modern communication methods, they may still communicate by mail, write letters, or talk personally to people. The State misses the point. The fact that the law broadly bans a significant amount of expressive activity protected by the First Amendment means it is substantially overbroad because the overbreadth doctrine focuses on the expression affected by the statute, not on alternatives available to those banned from that expression. Moreover, the ban burdens substantially more speech than is necessary to serve the State's legitimate interest in protecting children. Additionally, although those banned from social networking sites still have the right to call, write, or personally meet persons, they have clearly had totally foreclosed to them the ability to reach various audiences. Therefore, the statute, although content neutral, neither is neither narrowly tailored nor leaves

Page | 1

open alternative channels of communication. The statute is unconstitutional and therefore should be enjoined.

**Facts**

There is no disagreement as to the facts in this case, although the State does erroneously argue that the facts concerning the prevalence, and increasing necessity, of social networking sites, instant messaging, and chat rooms, are not relevant. However, the State, at pages 2-3 of its memorandum, appears to misinterpret the scope of the challenged law, giving it a narrowing interpretation that is contrary to its explicit text and is erroneous.

Specifically, the State appears to argue that the statute only applies to sexually violent predators or persons who committed designated sex offenses against children and who committed their crimes while over 21, while using deadly force, weapons, or controlled substances, or who were in positions or substantial influence over the victim. (Defendant's Trial Brief at 2-3 [Doc. No. 47]. This misreads the statute.

The statute, at Indiana Code § 35-42-4-12(b), provides that its ban and criminal penalties apply to any person required to register as a sex or violent offender under Indiana law who has been found to be a sexually violent predator or who has been convicted of the crimes of child molesting, child exploitation, possession of child pornography, vicarious sexual gratification, sexual conduct in the presence of a minor, child seduction, kidnapping of a child when the perpetrator is not the parent or guardian, or attempts or conspiracies to commit the above offenses. A sexually violent predator, Indiana Code § 35-38-1-7.5(b), includes persons convicted of rape and criminal deviate conduct, regardless of the victim's age. IND. CODE §§ 35-42-4-1, 35-42-4-1.

However, the statute does exempt a limited number of persons from coverage of the law. IND. CODE § 35-32-3-12(a)(1)-(4). The only persons specified in Indiana Code § 35-42-4-12(b) who are exempted from the law's prohibitions are those who:

- were no more than four or five years older than the victim, depending on the date of the offense; and,

- were in a dating relationship with the victim; and,

- were not 21 years of age or older when committing the crime;

- did not use deadly force or a weapon when committing the crime; and,

- did not cause serious bodily injury; and,

- did not facilitate their crime by drugging their victim or by taking advantage of a drugged victim; and,

- did not have a position of authority over the victim.

As noted by the State, this exception to the absolute bar applied to sexually violent predators and registrants who have committed the explicit offenses noted in Indiana Code § 35-42-4-12(b) is apparently designed to exclude "Romeo and Juliet" crimes (Defendant's Trial Brief at 3) where the victim is below the age of consent but nevertheless enters into a "consensual" relationship with a person under the age of 21. Although not described as such by the State, this is an extremely narrow exclusion to a statute that covers virtually every sex crime involving juvenile victims and some, like rape and criminal deviate conduct, which include adult victims.[1]

**Argument**

**I.      The statute is substantially overbroad**

---

[1]      The only sex crimes specifically directed at juvenile victims that are excluded from the prohibitions of the challenged statute are sexual misconduct with a minor (Indiana Code § 35-42-4-9), sex offender employment and residence violations (Indiana Code §§ 35-42-4-10, 11), and inappropriate communication with a child (Indiana Code § 35-42-4-13).

### A. *Salerno* does not apply to claims of substantial overbreadth

The State does not have a separate section in its brief responding to the plaintiffs' claims that the statute is unconstitutionally overbroad.[2] It does argue, however, that in order to prevail in this facial challenge the plaintiffs must establish that there are no set of circumstances under which the challenged law is valid. (Defendant's Trial Brief at 6 [citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)]). However, *Salerno* is clear that whatever the rule of that case may be, there is an exception in the First Amendment context. Thus, in *Salerno,* the Court stated that the fact that the law challenged there "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." 481 U.S. at 745.[3] Therefore,

---

[2] The State agrees that this statue affects expressive activity protected by the First Amendment. (Defendant's Trial Brief at 6 [Doc. No. 47]). However, in passing the State appears to question whether the plaintiffs are being denied a right to information, or at least questions plaintiffs' citation of a district court decision supporting that right. (*Id.* at 9-10). Regardless of any district court decision, the Supreme Court has noted, long ago, that "'[i]t is now well established that the Constitution protects the right to receive information and ideas.'" *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (internal citation omitted). And, the court in *Miller v. Northwest Region Library Bd.*, 348 F. Supp. 2d 563 (M.D. N.C. 2004), previously cited by the plaintiffs, specifically held that a library patron had a constitutional right, protected by the First Amendment, to receive information and the denial of this right had to be accompanied by due process. *Id.* at 570. In *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012), the court found that an ordinance prohibiting sex offenders from entering public libraries violated the First Amendment because the city had not demonstrated that the ban was a permissible time, place and manner restriction on the recognized First Amendment right to receive information, including the right to receive information through public libraries. *Id.* at 1119. Similarly, the statute here impinges on the right of the plaintiffs to receive information.

[3] The extent to which *Salerno's* "under no set of circumstances" formulation applies outside of the First Amendment is subject to debate. As the 10th Circuit recently noted, "it has not been established that the 'no set of circumstances' test applies to facial challenges *not based on overbreadth. . .* The idea that the Supreme Court applies the 'no set of circumstances' test to every facial challenge is simply a fiction, readily dispelled by a plethora of Supreme Court authority." *Doe v. City of Albuquerque*, 667 F.3d at 1123-24 (citing cases) (emphasis in original). Given the legitimate overbreadth challenge here, there is no need to explore this matter further at this juncture.

> [t]he First Amendment doctrine of overbreadth is an exception to our normal rule regarding standards for facial challenges. . . The showing that a law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep," suffices to invalidate *all* enforcement of that law, "until and unless a limiting construction or partial invalidation narrows it as to remove the seeming threat or deterrence to constitutionally protected expression."

*Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) (emphasis in original)). *See also Ben's Bar, Inc. v. Village of Somerset,* 316 F.3d 702, 708 n.11 (7th Cir. 2003) (noting exception to the *Salerno* rule in First Amendment overbreadth challenges).

### B.  The statute is substantially overbroad

Therefore, *Salerno* does not supply the appropriate standard here. Instead, the question is whether the statute is substantially overbroad, that is whether "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, − U.S. − , 130 S.Ct. 1577, 1587 (2010) (internal quotation and citation omitted).[4] It is readily apparent from looking at the statute and recognizing the great, and increasing, use of social networking, instant messaging, and chat rooms as instrumentalities of

---

[4] The overbreadth doctrine gives standing to permit litigants to attack overly broad statutes "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Of course, in this case, Mr. Doe is claiming that his rights are violated and he therefore need not claim standing through an overbreadth challenge. This does not foreclose a challenge to the overbreadth of the statute. As the Seventh Circuit noted in a challenge to Indiana's curfew statute:

> The plaintiffs in this case assert their legitimate intention to engage in the protected expression themselves and therefore, as a technical matter, they need not really rely on the overbreadth doctrine to assert their facial challenge . . . This is particularly so, where a plaintiff class has been certified which includes everyone who might be affected by the statute. . . Nevertheless, the plaintiffs may launch a facial attack on their own behalf if the statute creates an unacceptable risk of suppression of ideas. . . The distinction in this context is merely an academic one, for in either case the plaintiffs may seek to strike down the ordinance on its face.

*Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056-57 (7th Cir. 2004).

communication and association that the ban enacted by the statute is overly broad and removes all sorts of legitimate activities, protected by the First Amendment, in which Mr. Doe and the class would otherwise be able to participate.

The State does not disagree with the fact that the challenged statute erects a bar to communications and activities protected by the First Amendment, but argues repeatedly that the ban here is a limited restriction only and there are all sorts of activities protected by the First Amendment – conversations, letter writing, telephone calls – that are not prohibited by the statute. "This argument misperceives the nature of the overbreadth doctrine that focuses on the potential application of a statute to constitutionally protected conduct." *United States v. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977). That is, "[o]verbreadth analysis looks to whether a law 'sweeps within its ambit (protected) activities' as well as unprotected ones." *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1123 n.9 (1st Cir. 1981) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940)). Therefore, it is not useful to argue that there are alternative means of communication available to the plaintiffs. The sole question in this context is whether "the unconstitutional applications of [the] statute are substantial in relation to the statute's legitimate effect." *Roulette v. City of Seattle*, 97 F.3d 300, 312 (9th Cir. 1996).

Clearly, the statute prohibits numerous legitimate activities that are protected by the First Amendment. (*See* Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction at 23-24 [Doc. No. 35]). Given that there is no way to prohibit children from accessing any site (*see* Affidavit of Fred H. Cate, ¶¶ 24-26 [Doc. No. 34-2]), the statute erects an absolute ban on all social networking sites as well as all chat rooms and instant messaging sites.[5] As the court

---

[5] Given this uncontested fact, the State's comments throughout its trial brief that the plaintiffs may access social networking, instant messaging, or chat room sites that do not allow children (*see e.g.,* Defendant's Trial Brief at 12) are simply erroneous. Persons under the age of 18 may access all sites, either because the sites are explicitly open to them or by misrepresenting their age. The challenged

noted in *Doe v. Jindal*, − F. Supp. 2d −, 2012 WL 540100 (M.D. La. Feb. 16, 2012), in enjoining a similar statute as unconstitutionally overbroad, "this Court construes the Act to impose a sweeping ban on many commonly read news and information websites, in addition to social networking websites such as MySpace and Facebook." *Id.* at *5. The sweeping ban here is similarly unconstitutionally overbroad inasmuch as it prohibits a huge amount of constitutional conduct – "it reaches a substantial number of impermissible applications." *New York v. Ferber*, 458 U.S. 747, 771 (1982).

II. **The statute is not a reasonable time, place and manner restriction on conduct protected by the First Amendment**

The parties agree that as a content neutral regulation of First Amendment activity the challenged statute can be upheld only if it is narrowly tailored to serve a significant government interest as well as leaving open ample alternative channels for communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The State argues that the statute is narrowly tailored and it leaves open ample alternative channels. The State errs.

A. **The statute is not narrowly tailored**

The State argues that the statute is narrowly tailored because Indiana need not wait until children are injured, but can take proactive action to bar offenders from particular websites, particularly because the remainder of the internet is available to the offenders. (Defendant's Trial Brief at 8-9). The State therefore seeks to minimize the breadth of the ban. Of course, the ban is anything but narrow. Instead, it prohibits plaintiffs from "a great deal of modern methods of communication and social interaction." (Affidavit of Margaretha Geertsma-Sligh, ¶ 15 [Doc. No. 41-1]). They are prohibited "access to the largest and fastest-growing segment of the internet, and one that increasingly essential to employment, political discourse, and social and

---

statute therefore erects a total ban to any access to social networking, instant messaging, or chat room sites.

professional networking." (Affidavit of Fred H. Cate, ¶ 27 [Doc. No. 34-2]). The prohibition is total, banning all sorts of innocent communications. This is not narrowly tailored.

The definition of narrow tailoring bears repeating. Certainly, to be narrowly tailored the statute does not have to be the least restrictive means of meeting the State's compelling interest in safeguarding children. *Ward*, 491 U.S. at 798-99. And, the Court in *Ward* did note that "narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* at 799. (Internal citation omitted). However, the analysis and definition of narrow tailoring cannot stop there. "This standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests." *Id* at 799. The statute may not be "substantially broader than necessary to achieve the government's interest." *Id.* at 799. It is simply not enough to assert, as the State does, that it is seeking to protect children from predators and therefore the statute is valid. Narrow tailoring demands much more.

Clearly, the challenged statute is substantially broader than necessary to achieve the State's interests here. This can be seen in a number of ways. Although the statute is designed to protect children, persons who committed sex crimes against adults and who were convicted of rape or criminal deviate conduct are also banned. More importantly, as the plaintiffs have stressed, the statute includes within its ambit all sorts of innocent behavior, making it clear that the means chosen "burden[s] substantially more speech than is necessary."

The shear breadth of the statute can be seen by looking at Indiana Code § 35-42-4-13, the Indiana statute that prohibits inappropriate communication with a child. This statute provides, in pertinent part, that:

> a person at least twenty-one (21) years of age who knowingly or intentionally communicates with an individual whom the person believes to be a child less than

> fourteen (14) years of age concerning sexual activity with intent to gratify the sexual desires of the person or the individual commits inappropriate communication with a child, a Class B misdemeanor. However, the offense is a Class A misdemeanor if the person commits the offense by using a computer network.

IND. CODE § 35-42-4-13(c). Indiana Code § 35-42-4-13(c) demonstrates that Indiana can narrowly tailor a statute to attack the precise problem of sexual predators using social media sites and computer networks in general to attempt to gratify sexual desires. It serves the exact same purpose as the challenged statute – to protect children from sexual predators. However, unlike the challenged statute, the existing statute prohibiting inappropriate communications with a minor serves this purpose without prohibiting a huge amount of innocent conduct.[6] Indiana Code § 35-42-4-13(c) is narrowly tailored. Indiana Code § 35-42-4-12 is not.

Ironically, and irrationally, conviction of inappropriate communication with a child does not lead to the ban on social networking, instant messaging, and chat room access imposed by the challenged statute inasmuch as conviction of inappropriate communication with a child is not one of the crimes listed in Indiana Code § 35-42-4-12. The challenged statute is designed to deter inappropriate and dangerous communications with children, but it does not even include within its ambit those who were convicted of the specific offense of having inappropriate communications with a child. This is further evidence that the challenge statute is not appropriately tailored.

---

[6] In arguing that the government need not wait until a child is actually molested to take proactive action, the State, at page 3 of its brief, cites to *Doe v. City of Lafayette*, 377 F.3d 757 (7th Cir. 2004) (en banc). In that case, however, involving a sex offender banned from the city's parks, the offender had engaged in inappropriate conduct. *Id.* at 763 (noting that Mr. Doe had been "'cruising' in the parks 'looking for children' to satisfy his sexual urges."). Similarly, Indiana Code § 35-42-4-13 also allows for the punishment of adults who engage in inappropriate conduct short of sexual assault or similar conduct. Both *Doe* and Indiana Code § 35-42-4-13 represent proactive steps in a specific and targeted way to curtail or prevent perceived dangerous conduct. Indiana Code § 35-42-4-12 does not insofar as it reaches an enormous amount of innocent conduct.

In their original memorandum the plaintiffs analogized to a number of cases where total internet bans imposed as a condition of conditional release were found invalid as being overly broad. (Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction at 18-20 [Doc. No. 35]). The State notes that these cases are not relevant because they involve a total ban on a method of communication instead of what the State argues is the limited restriction imposed by the challenged statute. However, the State is using an elastic definition of "limited." The challenged statute effects a total ban on social networking usage, a total ban on instant messaging usage, and a total ban on the usage of chat rooms. Again, the question, from the narrow tailoring perspective, is whether this total ban, which prohibits the innocent use of these modern forms of communication, information acquisition, and association "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. The burden is on the State to demonstrate this, *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 664 (1994). And, "[a]lthough the [State] does not need to prove that its ban is the least restrictive approach to address its concerns, it still must show that it is not substantially more restrictive than necessary to meet the [State's] objectives." *Doe v. City of Albuquerque*, 667 F.3d at 1134. The State has failed in this burden. The challenged statute is not narrowly tailored.

  **B.** **The statute does not leave open alternative channels of communication**

As indicated, in arguing that the challenged statute leaves open alternative channels of communication the State argues that the plaintiffs may communicate, obtain information, and associate in ways not within the ban of the statute – they can write letters, communicate by mail or email, talk on the phone, or go to meetings. While this is true, it ignores the definition of "ample alternative channels for communication."

In *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002), the court addressed the constitutionality of an ordinance that banned the peddling of books on public property within 1,000 feet of Chicago's United Center. The ordinance was challenged by someone who wished to sell a book critical of the owner of the Chicago Blackhawks hockey team that played in the United Center. *Id.* at 1033. The plaintiff was free to sell his book elsewhere in Chicago, on the internet, in bookstores, etc. *Id.* at 1041. But, this was not sufficient to demonstrate adequate alternative channels.

> In applying this test, we also consider the alternative channels of communication themselves. The mere existence of an alternative method of communication cannot be the end of the analysis. We must also give adequate consideration to whether the alternatives are ample. Whether an alternative is ample should be considered from the speaker's point of view. . . [T]he simple fact that Weinberg is permitted to communicate his message elsewhere does not end our analysis if the intended message is rendered useless or is seriously burdened.

*Id.* The court concluded that the ordinance seriously burdened the plaintiff's ability to communicate his message, and therefore failed to leave open alternative channels.

In *Hodgkins*, the trial court had upheld Indiana's juvenile curfew statute against a First Amendment challenge by noting that juveniles had the opportunity to engage in First Amendment activities during non-curfew hours and could engage in these activities, even during curfew, through the telephone or the internet. 355 F.3d at 1063. Reversing the district court, the Seventh Circuit, citing *Weinberg*, noted that "although an adequate alternative for expression does not have to be the speaker's best or first choice, it must provide the speaker with sufficiently adequate alternatives." *Id.* The statute was deemed not to provide sufficient adequate alternatives.

Similarly, the plaintiffs are not provided with sufficient adequate alternatives. Mr. Doe wishes to participate in political advocacy and speech by accessing the Facebook pages of


politicians. (Affidavit of John Doe [Doc. No. 6-1], ¶¶ 5-6).  He cannot do so.  He would like to be able to comment and engage in discussions on news stories in media outlets that require such comments and discussion to occur through Facebook.  (*Id.* ¶ 7). He cannot do so.  He would like to sign petitions for political and other causes that require electronic signatures through Facebook.  (*Id.* ¶ 8).  He cannot engage in this expressive and associative conduct. He would like to advertise his business and network with others by putting profiles of himself on LinkedIn and Facebook and cannot do so.  (*Id.* ¶ 11).  Unknown class members undoubtedly have other reasons for wanting to express themselves through social networking, chat rooms, and instant messaging sites, but are unable to do so.  Their intended messages are "seriously burdened."

The fact that Mr. Weinberg had many other ways of selling his book, or that Mr. Hodgkins had other means to express himself besides being out after curfew, did not mean that they had ample alternative channels of communication.  For, "an alternative is not ample if the speaker is not permitted to reach the intended audience." *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (internal quotation omitted).  If a person wishes to comment to the Indianapolis Star, review other comments, and respond in a give-and-take fashion, the person must use Facebook.  There is no other way of reaching the intended audience.  If a person wants to reach the audience of persons around the country who support a national political candidate, they must use social networking sites. Again, there is no other way of reaching the intended audience. More and more politicians are reaching and communicating with live audiences through social networking sites. (*See e.g.,* Affidavit of Fred H. Cate, ¶ 42 [Doc. No. 34-2]).   There is no way for the plaintiffs to reach and associate with this intended audience.  "[A]n adequate alternative cannot totally foreclose a speaker's ability to reach one audience even if it allows the speaker to reach other groups." *Gresham v. Peterson*, 225 F.3d 899, 706 (7th Cir.

2001). The ban forecloses the ability to reach certain audiences and engage in certain types of expression. It does not leave open alternative channels of communication.

> As Professor Cate notes:
>
> social media and the communications tools they provide are the fastest growing means of accessing information and participating in political, social, cultural, and commercial discourse in the country today. They are increasingly critical for participating in this discourse; searching for jobs; obtaining information on candidates, companies, and other organizations; commenting effectively on current events; and maintaining links with friends, colleagues and family members.

(*Id.* ¶ 44). The State argues that being barred from this form of communication is permissible inasmuch as the "old-fashioned" methods of communication are still available. But it is simply not permissible to limit and restrict methods of communication in this way. The Supreme Court has noted that "[t]he First Amendment mandates that we presume that speakers, not the government, know best both what they want and how to say it." *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 790-91 (1988). The "how to say it" – communicating through social networking, instant messaging, and chat room sites – is what is important here. And, "[w]hile the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places . . . a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984). Given the continuing evolving methods of communications through social media, instant messaging, and chat rooms, the total and indiscriminate ban from these methods of communication leaves open only remaining modes of communication that are simply not adequate for the intended legitimate First Amendment expressions and activities of Mr. Doe and

the class.  The challenged statute does not leave open adequate alternative channels of communication.

**Conclusion**

For the foregoing reasons and the reasons noted in the plaintiffs' prior memorandum, Judgment should be entered for the plaintiffs and Indiana Code § 35-42-4-12 should be declared to be unconstitutional and it should be permanently enjoined.

/s/ Kenneth J. Falk
Kenneth J. Falk
No.  6777-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax:  317/635-4105
kfalk@aclu-in.org

Attorney for Plaintiffs

**Certificate of Service**

I hereby certify that on this 17th day of May, 2012, a copy of the foregoing was filed electronically with the Clerk of this Court.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system and the parties may access this filing through the Court's system.

David A. Arthur
Deputy Attorney General
david.arthur@atg.in.gov

Kate E. Shelby
Deputy Attorney General
kate.shelby@atg.in.gov

/s/ *Kenneth J. Falk*
Kenneth J. Falk
Attorney at Law